IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Blaine Keith Milam,<br> *Plaintiff*, | § § § | Civil Case No. 6:25-cv-267 |
| v. | § § § | |
| Micheal E. Jimerson, Rusk County<br>& District Attorney,<br> *Defendant*. | § § § § | **Execution Scheduled for Sept. 25, 2025** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

## NATURE OF THE ACTION

1. This civil-rights suit is brought under 42 U.S.C. § 1983 to remedy an ongoing violation of the Due Process Clause of the Fourteenth Amendment. Plaintiff, a state prisoner under sentence of death, seeks access to a complete set of underlying DNA worksheets, bench notes, electropherograms, chain-of-custody logs, electronic data, and other laboratory records from DNA testing ("DNA records"), the results of which the State used as evidence against Plaintiff at his 2010 criminal trial. The District Attorney—who commissioned and presented that forensic evidence—now invokes the State's post-conviction regime to refuse disclosure of the material, even though Plaintiff has a right to obtain relief based upon evidence of innocence.

2. Unlike statutory schemes for post-conviction access to biological evidence in the State's possession, Texas provides no enforceable post-conviction mechanism—judicial or administrative—for a prisoner to inspect the very data underlying the evidence the prosecution chose to introduce. Because a fair post-conviction process must allow a condemned person to test the reliability of scientific evidence that secured his conviction and death sentence, the State's blanket, prosecutor-controlled nondisclosure policy is fundamentally inconsistent with due process. Plaintiff therefore seeks declaratory and injunctive relief compelling the District Attorney to produce the requested DNA-testing records, as well as all other relief the Court deems just and proper.

## JURISDICTION AND VENUE

3. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because the claim arises under the Constitution and laws of the United States—namely, the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

1

4. Jurisdiction independently lies under 28 U.S.C. § 1343(a)(3)–(4) (civil-rights actions) and §§ 2201–2202 (declaratory and injunctive relief).

5. The Defendant, the elected County & District Attorney for Rusk County, Texas, resides and maintains his official office in Rusk County and acted—or refused to act—under color of state law within that county. Those contacts are sufficient for personal jurisdiction in this District.

6. Venue is proper in the Eastern District of Texas, under 28 U.S.C. § 1391(b)(1)&(2) because (a) the Defendant "resides" in this District when sued in his official capacity and (b) a substantial part of the events or omissions giving rise to the claim—including the refusal to disclose the DNA records—occurred in Rusk County.

## PARTIES

7. Plaintiff is currently incarcerated, pursuant to a judgment sentencing him to death entered by the 4th Judicial District Court of Texas ("4th District Court"), at the Polunsky Unit of the Texas Department of Criminal Justice in Livingston, Texas. He is scheduled to be executed on September 25, 2025.

8. Defendant Micheal Jimerson is the District Attorney of Rusk County, Texas, and maintains an office in the city of Rusk, Texas. He is being sued in his official capacity. Defendant Jimerson has custody and control of the DNA records that are the subject of this case.

## ALLEGATIONS

9. Plaintiff is wrongfully convicted and sentenced to death for the murder of the 13-month-old daughter of his then-fiancée, Jesseca Carson. Defendant prosecuted the State's case at trial. The 4th District Court signed its judgment on June 8, 2010. Defendant also sought and

obtained a conviction for capital murder against Carson but did not seek the death penalty against her.

*Asserted Liberty Interest*

10. Plaintiff has a liberty interest in obtaining relief from his criminal judgment if he can prove he is actually innocent. Texas's post-conviction review procedures permit a person sentenced to death to file an application for a writ of habeas corpus. The procedures are outlined in Texas Code of Criminal Procedure, Article 11.071 ("Article 11.071").

11. First, Texas's post-conviction review procedures permit an individual to obtain relief from a criminal judgment by showing they are actually innocent ("actual innocence claim"). *See Ex parte Elizondo*, 947 S.W.2d 202 (1996). The individual must prove by clear and convincing evidence that a jury would acquit him based on newly discovered evidence.

12. Second, Texas's post-conviction review procedures permit any person to obtain relief from a criminal judgment by showing that, by a preponderance of the evidence, had scientific evidence not discoverable through the exercise of due diligence at the time of trial been presented at the trial, the person would not have been convicted ("11.073 claim"). Tex. Code Crim. Proc. art. 11.073.

13. Third, Texas's post-conviction review procedures generally prohibit a court from considering the merits of claims presented in any habeas corpus application filed after the statutory time limit for filing an initial habeas corpus application. An exception exists where the application contains sufficient specific facts establishing by a preponderance of the evidence that, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt. Tex. Code Crim. Proc. art. 11.071. § 5(a)(2).

*Asserted Life Interest*

14. As a person who has been sentenced to death, Plaintiff retains an interest in his life that is not extinguished until the State executes him.

*Inadequacy of Texas's Post-Conviction Review Procedures*

15. At a trial held in 2010, Defendant obtained a conviction of capital murder against Plaintiff based primarily upon forensic odontological, serological, and DNA evidence. With respect to serological and DNA evidence specifically, the State presented testimony from a serologist and a forensic biologist from the Southwestern Institute of Forensic Sciences ("SWIFS"), the governmental laboratory the Defendant utilized to assist his investigation. The State relied on the testimony from both witnesses to meet its burden of establishing Plaintiff's guilt beyond a reasonable doubt.

16. Specifically, the State relied on testimony that several items of Plaintiff's clothing tested presumptively positive for trace amounts of blood that were mostly not visible to the human eye. The State also relied on testimony that the DNA profile from the decedent, who was a child in Plaintiff's care, either "matched" or was consistent with DNA samples taken from Plaintiff's shirt and jeans. Finally, Defendant relied on testimony that Plaintiff was included as a possible contributor to DNA from swabs of abrasions on the decedent's body.

17. Plaintiff's trial counsel contended that the DNA evidence purporting to connect Plaintiff to the deceased's body had little to no probative value, because the Plaintiff was a caretaker of the deceased and they lived in the same house. Thus, his DNA would be expected to be present on her and hers on him. The jury convicted Plaintiff and sentenced him to death.

18. The Court of Criminal Appeals of Texas ("CCA") affirmed Plaintiff's judgment on May 23, 2012. A petition for a writ of certiorari was not filed, and his criminal judgment became final on August 21, 2012.

19. Plaintiff timely invoked Texas's post-conviction relief procedures on May 21, 2012, by filing an initial application for a writ of habeas corpus asserting that his judgment was obtained in violation of the Sixth Amendment because he was deprived of effective representation.

20. When a habeas corpus application is filed, Texas's post-conviction review procedures require the State to file an answer. Based upon the application and answer, the convicting court must then determine whether controverted, previously unresolved factual issues material to the legality of the habeas applicant's confinement exist and issue a written order of that determination. If the convicting court determines the issues do not exist, the parties must file proposed findings of fact and conclusions of law on the pleadings for the court to consider. If the convicting court determines that controverted, previously unresolved factual issues material to the legality of the habeas applicant's confinement exist, the court must enter an order designating the issues of fact to be resolved and the manner in which the issues shall be resolved. To resolve the issues, the court may require affidavits, depositions, interrogatories, and evidentiary hearings and may use personal recollection. No mechanism for party-led discovery is provided.

21. The convicting court in Plaintiff's case determined that no controverted factual issues existed, declining to hold a hearing, and recommended the CCA deny the application. The CCA denied the application on September 11, 2013.

22. On January 1, 2014, Texas's Michael Morton Act ("MMA") became effective. Tex. Code Crim. Proc. art. 39.14. The MMA provided for discovery of the State's file as a matter of right for the first time in Texas criminal trials. The Texas Legislature's objective in passing the law

was to prevent wrongful convictions and ensure a fair trial by mandating that prosecutors provide broad, open-file discovery to the criminally accused. Recognizing the importance of information discovery to unearthing wrongful convictions, the Legislature included a provision requiring prosecutors to "promptly disclose the existence" of any exculpatory, impeachment, or mitigating document, item, or information "at any time," including after trial. The MMA was made prospective only, limited to offenses that occurred on or after its effective date.

23. Plaintiff thereafter sought habeas corpus relief in federal court, which concluded by the denial of a writ of certiorari on October 9, 2018.

24. On October 4, 2018, Jennae Swiergula from Texas Defender Service and Jason Hawkins of the Federal Public Defenders Office of the Northern District of Texas were appointed by the United States District Court for the Eastern District of Texas to represent Plaintiff pursuant to 18 U.S.C. § 3599 in substitution for prior counsel.

25. On November 19 and 20, 2018, Plaintiff, through appointed counsel, reviewed files made available to them by Defendant. On December 6, 2018, Plaintiff, through appointed counsel, reviewed files made available to them by the Office of the Attorney General of Texas ("OAG"), which had participated in Plaintiff's trial as a part of the prosecution team. Through that file review, Plaintiff obtained portions of the DNA records from SWIFS pertaining to Plaintiff's case.

26. On January 7, 2019, Plaintiff filed a second application for a writ of habeas corpus in state court alleging, inter alia, an 11.073 claim. Specifically, he alleged that State-sponsored testimony from a forensic odontologist purporting to identify abrasions on the decedent as human bite marks and purporting to identify Plaintiff as the source of those abrasions was unreliable and would not be admissible in light of new scientific evidence that was not available at the time of

trial. Plaintiff continued to take the position that the DNA evidence presented at trial was immaterial to Plaintiff's conviction given the circumstances of the case.

27.  The CCA authorized the 11.073 claim and remanded it for consideration by the convicting court. The convicting court, however, again declined to hold a hearing and summarily recommended denial on the pleadings. In doing so, the convicting court wholesale adopted proposed findings of fact and conclusions of law drafted and submitted by the Defendant. The convicting court's recommendation concluded that Plaintiff could not meet his burden of showing that he would not have been convicted even if the odontological opinion testimony had been excluded because, inter alia, the DNA evidence presented by the State continued to connect him to the deceased. Specifically, the convicting court adopted conclusions that the "DNA evidence taken from injuries on [the decedent's] body more strongly points to [Plaintiff] as the contributor" of the DNA; that "the explanation that DNA could have been left on [the decedent's] elbow while [Plaintiff] attempted to perform CPR" was "not credible;" and that the DNA evidence "link[ed] Plaintiff] to the injuries" on the decedent.

28.  On July 1, 2020, without affording any additional process, the CCA adopted most of the trial court's findings, including all the findings referenced above, and denied the application.

29.  On January 12, 2021, Plaintiff filed a third habeas corpus application in state court alleging the Eighth Amendment prohibited his execution because he is intellectually disabled. The CCA authorized the application for consideration by the convicting court but ultimately denied it on July 31, 2024. The Supreme Court denied a writ of certiorari on March 10, 2025.

30.  In March 2023, the National Institute of Standards and Technology ("NIST") published a new report, *Bite Mark Analysis: A NIST Scientific Foundation Review*, that established a scientific consensus that opinions purporting to exclude or not exclude a particular individual's

7

dentitions as the source of injuries on skin is not scientifically supportable. In its 2020 denial of his habeas application, the CCA had determined that such testimony was scientifically supportable in Plaintiff's case. Thus, Plaintiff anticipates presenting actual innocence and Article 11.073 claims. He also anticipates invoking Texas's actual innocence gateway to obtain consideration of these and other habeas claims.

31.   On September 9, 2024, Plaintiff, through counsel, sent a request to SWIFS requesting a complete copy of the lab's DNA file related to Plaintiff's case. Plaintiff requested:

1. a color copy of the complete DNA case files for Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3 (victim [AC] (DOB 11/12/2007), including but not limited to: (a) all records, reports, bench notes, memos, nonconformity reports, drawings, photographs, electropherograms, data sheets, allelic frequency tables, communications, communication logs, or other documents relating to any DNA testing, analysis, or reinterpretation conducted in relation to these cases at any time; (b) all communications between DPS and any law enforcement agency, agents for the State of Texas, or any prosecutorial agency, relating to Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3; (c) all records pertaining to all DNA statistics that were calculated during DNA testing and analysis in Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3;

2. all records of any laboratory error, unexpected results, contamination, or other quality assurance incidents relating to or impacting the DNA testing or DNA reinterpretations in #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3;

3. all standard operating procedures related to the DNA testing and analysis conducted in Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3, that were in place at the time that any testing or analysis was conducted;

4. all reports, memos, or documentation, electronic or otherwise, pertaining to the location and chain of custody of any evidence subjected to DNA testing, analysis, or reinterpretation in Laboratory # # 08P2031;

5. a list of all testing kits, instruments, and software programs used in the DNA testing and analysis in Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3;

6. all internal communications between DPS employees regarding any DNA testing, analysis, or reinterpretation of the DNA evidence in Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3, including but not limited to, all written communications sent or received through any medium, including e-mail, telegrams, and telex messages, and any and all summaries or logs of phone communications or other oral communications;

       7. all communications between DPS employees and employees or representatives of any law enforcement agency, prosecutorial agency, agents of the State of Texas or any other agency or person involved in the investigation of the case, regarding the DNA testing, analysis, or reinterpretation of the DNA evidence in Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3, including but not limited to, all written communications sent or received through any medium, including e-mail, telegrams, and telex messages, and any and all summaries or logs of phone communications or other oral communications.

    32.    On September 23, 2024, SWIFS sent a letter to the OAG asserting the case-specific records were confidential by law and could not be disclosed to the public pursuant to Texas Government Code § 411.153(a).

    33.    On October 1, 2024, Plaintiff, through counsel, wrote to counsel for SWIFS to clarify that the request for the DNA records was not a request for public information but was made as counsel for Plaintiff in connection with Plaintiff's criminal case. Plaintiff asserted that Texas Government Code § 411.147(c)(3) permitted DNA records to be disclosed "for criminal defense purposes to a defendant, if related to the case in which the defendant is charged." A copy of the letter was also sent to the OAG in connection with SWIFS's opinion request.

    34.    On December 16, 2024, the OAG issued an opinion that the case-specific DNA records requested were not subject to disclosure under the Public Information Act. The OAG opinion recognized that Plaintiff had asserted a right of access to the information at issue pursuant to Texas Government Code § 411.147(c)(3), but it ruled that section "applies only to records maintained by DPS." Because the DNA records requested were maintained by SWIFS and not DPS, the OAG concluded that provision was "not applicable" and that SWIFS was therefore required to withhold the DNA records in conjunction with § 411.153.

    35.    On April 8, 2025, Plaintiff, through counsel, contacted Defendant and requested that he obtain and provide to Plaintiff the DNA records from SWIFS. Plaintiff made this request, in part, in light of recent changes in science relating to DNA transfer that implicate prior materiality

9

adjudications. That is, the scientific community now recognizes that it is not possible to know the mechanism through which DNA was deposited on a surface, including whether the transfer was direct or indirect. Moreover, recent changes in mixture analysis requirements require a reevaluation of the mixture analysis testified to at trial, and some of the DNA results may now be considered inconclusive or uninterpretable under current standards. Defendant denied Plaintiff's request. In doing so, Defendant did not deny the records were exculpatory and material. On April 11, 2025, Plaintiff's counsel sent Defendant a formal discovery request letter. That letter went unanswered.

36. On April 16, 2025, Plaintiff filed a discovery motion in the underlying criminal case requesting an order directing the Defendant to produce the SWIFS file. The Defendant opposed the request, relying on *In re Texas Dep't of Crim. Just.*, 710 S.W.3d 731 (Tex. Crim. App. 2025), to assert the court lacked jurisdiction to hear the motion and otherwise lacked authority to issue an order in the criminal case. Defendant also disclaimed the applicability of the MMA to the case. Defendant did not deny that the records Plaintiff seeks are exculpatory and material.

37. On May 23, 2025, the court summarily denied Plaintiff's discovery motion in the underlying criminal case. Texas's post-conviction review procedures provide no other mechanism for obtaining the records to prepare a subsequent state habeas application.

38. On July 3, 2025, counsel for Plaintiff filed a complaint with the Texas Forensic Science Commission ("TFSC") related to the DNA testimony sponsored by the State in Plaintiff's criminal trial. Plaintiff has no reason to believe the TSFC has any authority to obtain and provide the DNA records to Plaintiff. The complaint illuminates, however, why Plaintiff believes access to the DNA records are imperative to his ability to prove actual innocence. The limited DNA records currently available reflect that SWIFS inconsistently applied its DNA testing protocols to the

biological evidence in Plaintiff's case, reflecting a biased testing strategy. For example, SWIFS may have manipulated the data from the testing of Plaintiff's shirt to manufacture a conclusion that the DNA on it was a single source profile matching the decedent despite indications the sample was a mixed profile with more than one contributor.

39. Reviewing the electronic data Defendant is presently withholding would permit Plaintiff to evaluate the limitations in the DNA testing, investigate SWIFS's potentially biased testing methods, and assess whether other potential contributors can be included or excluded from the DNA profiles obtained from the evidentiary samples. Additionally, the available records reflect that SWIFS's interpretations of four mixed DNA samples that Defendant argued were bite marks made by Plaintiff are scientifically unreliable and the product of biased interpretation methods. Access to the complete DNA records could help Plaintiff prove that SWIFS's conclusions that Plaintiff could not be excluded as a contributor to these samples are so unreliable that they should not have been admitted at trial.

## CAUSES OF ACTION

*Count 1: 42 U.S.C. § 1983*
*Violation of the Fourteenth Amendment (Procedural Due Process – Access to Exculpatory DNA Records)*

40. Plaintiff re-alleges and incorporates by reference ¶¶ 1–39 as though fully set forth herein.

41. Under the Fourteenth Amendment a State may not create a vehicle for obtaining relief through a showing of actual innocence yet deny a prisoner a fair, meaningful opportunity to demonstrate his innocence. *District Attorney's Office v. Osborne*, 557 U.S. 52, 68 (2009). Once the State elects to use forensic DNA evidence to obtain and preserve a conviction, due process requires that the prisoner be given procedures adequate to test the reliability of that evidence.

42. Defendant, acting under color of state law and pursuant to office policy, refuses to disclose the DNA records even though:

    a. those materials were generated at the District Attorney's direction and produced evidence used against Plaintiff at trial;

    b. Plaintiff has presented specific, non-frivolous reasons to believe the DNA records reveal biased or flawed testing; and

    c. no legitimate governmental interest outweighs Plaintiff's paramount liberty interest in ascertaining the reliability of the purported scientific evidence that sustains his criminal judgment.

43. The State's post-conviction review procedures vest total, unreviewable discretion in the District Attorney to withhold these records and provides no alternative judicial or administrative process to obtain them. Under the circumstances of this case, that procedural regime violates due process because it (i) creates an unacceptably high risk of erroneous continued deprivation of liberty interests, (ii) offers no substitute procedural safeguard, and (iii) burdens the Plaintiff's fundamental interest in proving actual innocence far more heavily than it serves any valid governmental objective.

44. Furthermore, Defendant has violated Plaintiff's due process rights by interfering with his ability to access and utilize available state post-conviction procedures.

45. By maintaining and enforcing this disclosure bar, Defendant has deprived and continues to deprive Plaintiff of rights secured by the Fourteenth Amendment, entitling Plaintiff to declaratory and injunctive relief under 42 U.S.C. § 1983, as well as costs and attorney's fees under 42 U.S.C. § 1988.

*Count 2: 28 U.S.C. §§ 2201-2202*
*Declaratory Judgment Act*

46. Plaintiff re-alleges and incorporates by reference ¶¶ 1–39 as though fully set forth herein.

47. An actual, present controversy exists concerning Plaintiff's constitutional right to obtain the DNA records at issue. A declaration that Defendant's refusal—and the State procedures authorizing it—violate Plaintiff's due-process rights would resolve that controversy and guide the parties' future conduct.

48. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a judgment declaring that the State's record-withholding scheme, as applied to the DNA materials underlying Plaintiff's conviction, is unconstitutional. Under § 2202, Plaintiff further seeks such ancillary injunctive relief as is necessary to effectuate the declaration, including an order compelling Defendant to disclose the requested records forthwith.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare under 28 U.S.C. § 2201 that Defendant's continued refusal to disclose the DNA records violates Plaintiff's rights to procedural due process secured by the Fourteenth Amendment and 42 U.S.C. § 1983;

2. Issue preliminary and permanent injunctive relief under 28 U.S.C. § 2202 and Fed. R. Civ. P. 65 compelling Defendant forthwith to produce the requested DNA records and enjoining Defendant from withholding those materials or otherwise obstructing Plaintiff's access to them;

3. Retain jurisdiction to enforce the declaratory and injunctive orders and to resolve any disputes arising from Defendant's compliance;

4. Award attorney's fees and litigation expenses to Plaintiff pursuant to 42 U.S.C. § 1988 for counsel not employed by the Federal Defender, together with taxable costs under 28 U.S.C. § 1920;

5. Grant such other and further relief—legal or equitable—as the Court deems just and proper.

Respectfully submitted,

DATE: July 18, 2025

JASON D. HAWKINS
Federal Public Defender

*/s/ Jeremy Schepers*
Jeremy Schepers*
Supervisor, Capital Habeas Unit
Texas Bar No. 24084578

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jeremy_schepers@fd.org

EMILY FOLLANSBEE
Texas Bar No. 24124283
efollansbee@texasdefender.org
JARED TYLER
Texas Bar No. 24042073
jptyler@texasdefender.org
TEXAS DEFENDER SERVICE
P.O. Box 82236
Austin, TX 78708
Tel: 512-320-8300
Fax: 512-477-2153

Counsel for Plaintiff
*Lead Attorney

## CERTIFICATE OF SERVICE

I certify that on July 18, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court for the Eastern District of Texas using the electronic case-filing (ECF) system of the Court, which will serve all registered users in this case. I have also sent a copy via electronic mail to Micheal Jimerson, Rusk County and District Attorney, at mjimerson@ruskcountytx.gov, and Tomee Hening, Chief, Criminal Appeals Division, Attorney General of Texas, at Tomee.Heining@oag.texas.gov.

*/s/ Jeremy Schepers*
Jeremy Schepers