IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| Blaine Keith Milam,<br>    *Plaintiff*,<br><br>v.<br><br>Micheal E. Jimerson, Rusk County<br>& District Attorney,<br>    *Defendant*. | Civil Case No. 6:25-cv-267<br><br><br><br><br>**Execution Scheduled for Sept. 25, 2025** |

**PLAINTIFF'S MORE DEFINITE STATEMENT**

Plaintiff Blaine Milam filed a civil rights action under 42 U.S.C. § 1983 to remedy an ongoing violation of the Due Process Clause of the Fourteenth Amendment. The Defendant, while acting under color of state law, refused to provide Plaintiff with exculpatory DNA records and interfered with Plaintiff's ability to utilize available state post-conviction procedures. ECF No. 1. This Court ordered Plaintiff to file a More Definite Statement addressing seven issues. ECF No. 7. Plaintiff's More Definite Statement follows:

1. **Milam should CLARIFY his request for SWIFS records to reflect only those records that exist, and that he does not have in his possession or has not reviewed in the file of the Rusk County District Attorney or of the Office of the Attorney General.**

In 2018, Plaintiff obtained 800 pages of what appear to be Southwestern Institute of Forensic Sciences ("SWIFS") records relating to serological and DNA testing it performed in the case from a review of the case file of the Attorney General of Texas conducted shortly after counsel was appointed to the case. (The Attorney General of Texas assisted the Rusk County and District Attorney in the prosecution of the trial.) Plaintiff also reviewed the Defendant's files regarding Plaintiff's capital murder conviction, which had DNA records as well. These records have never

1

been represented to Plaintiff by the Defendant, or SWIFS or an attorney on their behalf, to constitute the complete paper file possessed by SWIFS as it relates to their serological and DNA testing in the case.

In 2019, Plaintiff separately obtained 162 pages of non-case specific paper records (such as Standard Operating Procedures) directly from SWIFS pursuant to a Public Information Act request; however, SWIFS requested and obtained a ruling from the Attorney General of Texas permitting it to withhold any records related to the specified DNA case files requested by Plaintiff. No serological or DNA case file records were disclosed.

In 2024, based in part on changes to relevant DNA science, *see generally* Ex. 1 at 2-3, Plaintiff again requested the DNA file related to his case from SWIFS. SWIFS treated Plaintiff's request as a Public Information Act request and obtained a ruling from the Texas Attorney General that the DNA case file records were exempt from public disclosure pursuant to § 552.108 of the Texas Government Code. Likewise, in April 2025 Plaintiff requested the DNA records from the Defendant, who refused to provide them to Plaintiff.

Plaintiff is aware that SWIFS possesses, at minimum, records in the form of electronic files corresponding to its work analyzing biological samples for DNA evidence that the Defendant has prevented him from accessing. Plaintiff does not possess these records. Furthermore, because Plaintiff has never received any information that the paper records in his possession are a complete version of the case files relevant to his prosecution, there may be other records not in his possession but not possible for him to identify that the Defendant has precluded access to.

2.  **Milam should CLARIFY how any flaw in one of SWIFS' tests would establish his actual innocence. Milam should explain thoroughly, including any case law on point, how a flawed test in his circumstances could result in factual, actual innocence.**

Texas law permits Plaintiff to obtain relief from his criminal judgment through a habeas corpus application if he can establish, by clear and convincing evidence, that no reasonable juror would have convicted him in light of new evidence. *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996), *superseded by statute on other grounds*, Tex. Code Crim. Proc. art. 11.071 § 5(a)(3), *as recognized by Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007). Texas law also permits Plaintiff to obtain relief from his criminal judgment through a habeas corpus application if he can establish by a preponderance of the evidence that, but for a constitutional violation at trial, no reasonable juror would have voted to convict him. Tex. Code Crim. Proc. art. 11.071, § 5(a)(2).

The victim in the underlying state criminal case was the child of Plaintiff's then-fiancee. All three lived together in Plaintiff's mother's rural trailer home. Both Plaintiff and his then-fiancee were convicted of capital murder although the State sought the death penalty against Plaintiff only. The parties cohabited with each other and Plaintiff and his then-fiancee were caretakers for the victim.

At Plaintiff's trial, the State relied on (1) forensic odontological evidence (bite mark comparison analysis) purporting to establish Plaintiff as the cause of certain non-fatal injuries on the victim's skin; and (2) a vague statement Plaintiff allegedly made to a jail nurse that he was going to tell authorities he "did it" in order to prove that he participated as a party to capital murder. The State used DNA evidence at the trial primarily to corroborate its forensic odontological testimony. Specifically, the State presented evidence that Plaintiff could not be excluded as a source of DNA on swabs taken from four injuries on the victim's skin. For one of those in

3

particular, the State told the jury that it could rely on that information to credit the entirety of its forensic odontological evidence. The State also relied on evidence that the victim's DNA was present on Plaintiff's shirt.

In 2019, Plaintiff challenged the State's use of forensic odontological evidence at his trial in a habeas application filed in state court using Texas's "junk science" law contained in Texas Code of Criminal Procedure, Article 11.073. In that application, Plaintiff alleged his vague statement that he did "it" was not probative evidence of guilt because the statement provides no detail about what specific acts Plaintiff was purportedly taking responsibility for.[1] Plaintiff also alleged that the DNA evidence was not material because it showed little more than that he, his co-defendant, and the victim all resided in the same home and that the victim was an infant Plaintiff helped care for.

As relevant to his claim that Defendant has violated Plaintiff's due process rights by denying him access to the complete DNA case file, the State court denied the 2019 state habeas application, in part by adopting findings proposed to it by the State that, notwithstanding any flawed odontological testimony, a jury would have still convicted Plaintiff because of the DNA evidence presented at trial. The court found that Plaintiff was "directly implicated" by (1) Plaintiff's shirt being "forensically linked to [the victim] through blood and DNA evidence," FF&CL 161(b)(1)–(2); and (2) DNA testing of samples taken from certain injuries on the victim's body purported to be bite marks, FF&CL 161(g)(1)–(2).

---

[1] Indeed, this statement is impossible to corroborate because it provides no specific facts that a factfinder could compare to the physical evidence to assess its reliability. Moreover, due to Plaintiff's impaired intellectual functioning, he is at heightened risk of falsely admitting culpability. *See Hall v. Florida*, 572 U.S. 701, 709 (2014) (intellectually impaired persons are "more likely to give false confessions"). In fact, Plaintiff expressly contemplated taking the blame for his co-defendant during his custodial interview. During the interview, he asked the detective interrogating him, "how much trouble can you get in for taking the blame?" And then, following the detectives next question, asked again: "And if I tell you, what if I tell you it was me and I take the blame for somebody else, will I be in trouble?" *State v. Milam*, CR09-066, 59 RR SX E-2, at 48 (4th Judicial Dist. Ct. Jan. 19, 2010).

More specifically as to the latter, the State pointed to results from four samples taken from injuries on the victim's body, and one in particular from the left elbow in which "the majority of the genetic markers corresponded to [Plaintiff] with a statistical probability of 1 in 27,000 Caucasians, 1 in 43,600 African-Americans, and 1 in 47,200 Hispanics." The State proposed, and the trial court verbatim adopted, a conclusion that, although Plaintiff's fiancee also could not be excluded as a contributor from the sample, the DNA evidence "more strongly points to [Plaintiff] as the contributor." Those findings were adopted by the Texas Court of Criminal Appeals to deny Plaintiff's application. Thus, the State and the state court have both relied upon the DNA evidence specifically to reject Plaintiff's challenge to his conviction.

Since filing this suit, SWIFS has admitted in response to a complaint Plaintiff filed with the Texas Forensic Science Commission that the DNA evidence presented at trial—specifically the four samples taken from injuries on the victim's body—was unreliable and requires reinterpretation. SWIFS has indicated that the reinterpretation will be conducted soon and that they anticipate that a report will be issued next week. Plaintiff, however, still has not been given access to SWIFS's complete file as it relates to its prior DNA testing, including its electronic data, in order to fully ascertain the scope of problems with SWIFS's work in the case.

3. **Milam should CLARIFY whether there is any DNA record in his possession or that he has reviewed indicating the presence of any DNA that does not belong to himself, Jesseca Carson, or the decedent. In other words, does any of the DNA evidence belong to a third party that is not Milam, Carson, or the decedent.**

Plaintiff does possess information from the records in his possession that SWIFS's testing produced results reflecting the presence of a person's DNA other than he, Carson, or the victim. Plaintiff does not, however, intend to rely upon that information to make an innocence showing. Plaintiff seeks to show that the DNA evidence which has already been relied upon by the State to

5

uphold his conviction in the face of new evidence of his innocence is unreliable and therefore cannot be used to sustain the judgment against him.

4. **Milam should CLARIFY whether there is any physical evidence from the crime scene that still exists that should have been DNA tested but was not.**

No. Plaintiff is not requesting DNA testing of any previously untested evidence, nor is he aware of any that exists that should have been tested but was not.

5. **Milam should CLARIFY whether there are any factual or legal impediments that prevented him from availing himself of post-conviction DNA testing earlier than his filings in 2025.**

Plaintiff is not requesting DNA testing in either this lawsuit or in state court. The ongoing SWIFS reinterpretation is not new DNA testing, but a reassessment of the results of prior DNA testing based on SWIFS recognition that such reinterpretation was warranted. Plaintiff requested records from the Defendant pertaining to DNA testing that occurred prior to his trial. Since the adjudication of Plaintiff's 2019 state habeas application, recent developments in the science of DNA transfer and DNA mixture interpretation have emerged that implicate the prior findings of materiality regarding the DNA evidence in Plaintiff's case. *See* Ex. 1 at 2-3 (citing a 2024 report). Plaintiff requires the records in order to evaluate the DNA evidence in light of the new scientific developments.

6. **Milam is ORDERED to provide the Court with (1) a copy of his April 16, 2025 discovery motion filed in his underlying criminal case, (2) a copy of the Defendant's response in opposition, (3) a copy of the May 23, 2025 order denying the discovery request, and (4) a copy of the Texas Court of Criminal Appeals' order regarding his motion.**

The requested documents, and Plaintiff's Reply, are attached as Exhibits 1-4. No appeal was taken to the Texas Court of Criminal Appeals.

**7. Milam should IDENTIFY the existence of any procedurally defaulted federal habeas claim that he could overcome through a showing of actual innocence.**

Plaintiff's civil rights action is filed to allow him to utilize available state post-conviction procedures without undue interference from the Defendant. At this juncture, he does not anticipate using the requested records to pursue federal habeas relief, but he cannot make that final assessment until he receives the requested records.

Respectfully submitted,

DATE: August 6, 2025

JASON D. HAWKINS
Federal Public Defender

*/s/ Jeremy Schepers*
Jeremy Schepers*
Supervisor, Capital Habeas Unit
Texas Bar No. 24084578

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jeremy_schepers@fd.org

EMILY FOLLANSBEE
Texas Bar No. 24124283
efollansbee@texasdefender.org
JARED TYLER
Texas Bar No. 24042073
jptyler@texasdefender.org
TEXAS DEFENDER SERVICE
P.O. Box 82236
Austin, TX 78708
Tel: 512-320-8300
Fax: 512-477-2153

Counsel for Plaintiff
**Lead Attorney*

## CERTIFICATE OF SERVICE

I certify that on August 6, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court for the Eastern District of Texas using the electronic case-filing (ECF) system of the Court, which will serve all registered users in this case.

*/s/ Jeremy Schepers*
Jeremy Schepers
