Case 6:25-cv-00267-JDK   Document 9-1   Filed 08/06/25   Page 1 of 10 PageID #: 48

CR09-066
Filed 4/16/2025 3:15 PM
Terri Pirtle Willard
District Clerk
Rusk County, Texas
By: Kayla Kirkland

CAUSE NO. CR09-066

| | | |
|---|---|---|
| STATE OF TEXAS | } | IN THE DISTRICT COURT |
| vs. | } | 4TH JUDICIAL DISTRICT |
| BLAINE MILAM | } | RUSK COUNTY, TEXAS |

## <u>MOTION FOR DISCOVERY OF DNA AND SEROLOGY RECORDS FROM THE SOUTHWEST INSTITUTE OF FORENSIC SCIENCES</u>

Pursuant to Article 39.14 of the Texas Code of Criminal Procedure, the Fourteenth Amendment to the United States Constitution, Texas Disciplinary Rules of Professional Conduct, Rule 3.09, and all other authorities cited in this Motion, Blaine Milam requests that this Court order the State to produce documents in the possession of the Southwest Institute of Forensic Sciences ("SWIFS"). Specifically, Mr. Milam seeks the DNA and serology case files related to this case generated by SWIFS. In support, Mr. Milam would show the following:

### FACTUAL BACKGROUND

Blaine Milam was convicted of capital murder in this Court on May 17, 2010, and sentenced to death on May 27, 2010. On September 11, 2018, this Court set an execution date for January 15, 2019. On October 4, 2018, the United States District Court for the Eastern District of Texas appointed undersigned counsel's offices to represent Mr. Milam pursuant to 18 U.S.C. § 3599.

Mr. Milam filed a motion for stay of execution and a state habeas application on January 7, 2019, in which he raised a claim that the "bitemark comparison" testimony relied on by the State at trial was no longer compatible with the then-current scientific consensus about the reliability (or lack thereof) of such testimony and that he was entitled to relief under Article 11.073 of the Code of Criminal Procedure. With regard to the materiality of "bitemark comparison" testimony, Mr. Milam took the position that the DNA evidence introduced at trial did not undermine the material

1

nature of the purported bitemark identification because the DNA evidence showed little more than the fact that Mr. Milam, his co-defendant Jesseca Carson, and the decedent all resided together. The Court of Criminal Appeals found that this claim met the requirements of Article 11.071 § 5 of the Code of Criminal Procedure and remanded the claim to this Court for adjudication of the merits. This Court signed the State's Proposed Findings of Fact and Conclusions of Law rejecting Mr. Milam's 11.073 claim. The Court rejected Mr. Milam's claim in part based on a finding that that, under the scientific standards at the time, some of the "bitemark comparison" testimony introduced at trial would still be admissible. However, the Court also found that Mr. Milam could not meet his burden of showing materiality because of, *inter alia*, the DNA evidence introduced at trial. Specifically, the Court adopted findings proposed by the State that the "DNA evidence taken from injuries on [the decedent's] body more strongly points to [Mr. Milam] as the contributor" of the DNA; that "the explanation that DNA could have been left on [the decedent's] elbow while [Mr. Milam] attempted to perform CPR" was "not credible;" and that the DNA evidence "link[ed Mr. Milam] to the injuries" on the decedent. *Ex parte Milam*, No. CR09-066, State's Proposed Findings of Fact and Conclusions of Law, at ¶¶ 161(g)(1), (2); 162 (4th Jud. Dist. Ct. Oct. 16, 2019).

Since the adjudication of Mr. Milam's 11.073 claim in 2019, the scientific consensus has changed to entirely repudiate *any* opinions derived from purported bitemark comparison analysis. As such, Mr. Milam intends to file another subsequent state habeas application raising, at a minimum, a claim that the State's presentation of bitemark comparison testimony at his trial violated due process. *See Andrew v. White*, 604 U.S. ---, 145 S. Ct. 75, at 83 (Jan. 21, 2025) (Due process "forbids the introduction of evidence so unduly prejudicial as to render a criminal trial fundamentally unfair."). While a due process claim requires a different showing of harm than

Article 11.073, very recent changes in science related to touch or trace DNA—relating to the transfer of DNA to an object or surface—implicate this Court's prior materiality findings. That is, the scientific consensus no longer allows any definitive conclusions about *how* the DNA relied on by the State was deposited.[1] Thus, new science likely undermines this Court's prior findings about the materiality of the DNA evidence and Mr. Milam requires the SWIFS records in order to evaluate the implications of this new science on his case. Moreover, recent changes in mixture analysis requirements require a reevaluation of the mixture analysis testified to at trial, and some of the DNA results may now be considered inconclusive under current standards.[2] These changes in science may also give rise to additional claims for relief.

## ARGUMENT

Given the State's position that the DNA evidence was material to Mr. Milam's conviction, the State has a duty to produce the DNA records sought by Mr. Milam. *See Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Bagley*, 473 U.S. 667 (1985); Tex. Code Crim. Proc. Art. 39.14 (h), (k); Texas Disciplinary Rules of Professional Conduct, Rule 3.09. Mr. Milam requested that the State produce these documents, but the State has declined to do so.[3]

---

[1] *See, e.g.*, National Institute of Standards and Technology, *Forensic DNA Interpretation and Human Factors: Improving Practice Through a Systems Approach*, at 176 (May 2024) (Forensic science service providers should issue guidelines for their DNA analysts, including that "DNA analysts should not opine about how likely, possible, or probable a particular transfer scenario is (e.g., indirect or direct transfer).").

[2] Inconclusive results would, of course, not weigh against the materiality of the testimony regarding purported bitemark identification, also implicating this Court's prior findings that the DNA evidence weighed against the materiality of the purported bitemark evidence. *See, e.g. Cate v. State*, 326 S.W.3d 388, 390 (Tex. App.—Amarillo 2010, pet. ref'd) (Inconclusive evidence does not make innocence more or less probable.").

[3] Both the Rusk County District Attorney's Office and the Office of the Texas Attorney General, who participated in the prosecution of Mr. Milam at trial, allowed undersigned counsel to review their file in 2018 prior to Mr. Milam's first execution date. Some documents from the

3

Discovery in Texas criminal cases is governed by Article 39.14 of the Code of Criminal Procedure, which provides in relevant part that the State:

> shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.

Tex. Code Crim. Proc. art. 39.14(h). Under Article 39.14, "the State's new, broader obligations apply prior to trial, *continue after conviction*, and must be complied with quickly." *Watkins v. State*, 619 S.W.3d 265, 278 (Tex. Crim. App. 2021); *see also* Tex. Code Crim. Proc. art. 39.14(k) ("If at any time before, during, *or after trial* the state discovers any additional document, item, or information required to be disclosed under Subsection (h), the state shall promptly disclose the existence of the document, item, or information to the defendant or the court.") (emphasis added). Simply put, there is an "independent and continuing duty for prosecutors to disclose evidence that may be favorable to the defense." *Watkins*, 619 S.W.3d at 277.

Similarly, the Due Process Clause of the Fourteenth Amendment requires disclosure "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The State used SWIFS as a part of its investigation into this case. Given the State's acknowledgment of the materiality of the evidence generated by SWIFS, it has an

---

SWIFS case files were in those files. However, Mr. Milam did not acquire a complete set of the documents through that review. Nor do the documents appear to be in files obtained by Mr. Milam from prior counsel. Mr. Milam also requested these records directly from SWIFS. However, SWIFS treated his request as a Public Information Act request even though it was not made as such and obtained a ruling from the Office of the Attorney General that these records are exempt from public disclosure pursuant to § 552.108 of the Texas Government Code. Thus Mr. Milam seeks an order compelling the State to obtain the documents from SWIFS to be produced to him in order to obtain copies of the documents he has been unable to acquire and to ensure that he has a complete set of SWIFS' case files.

obligation under *Brady* to provide SWIFS records that are favorable to Mr. Milam. *See Kyles v. Whitley*, 514 U.S. 419, 422 (1995) (State's obligation to provide defense with exculpatory, material evidence applies to evidence in the possession of investigators and unknown to the prosecution); *see also State v. Heath*, 696 S.W.3d 677, 695 (Tex. Crim. App. 2024) (Under Article 39.14 "the 'state,' including law enforcement as well as third-party contractors with the state such as crime laboratories, has a duty to disclose evidence.").

A trial court in a criminal case has the authority to take "actions authorized by constitution, statute, or common law." *State v. Johnson*, 821 S.W.2d 609, 612 (Tex. Crim. App. 1991). The legislature explicitly provided that prosecutors have an ongoing obligation to provide exculpatory evidence, even post-trial. Tex. Code Crim. Proc. art. 39.14(k); *Watkins*, 619 S.W.3d at 277. Therefore, trial courts must have the authority post-trial to ensure that the State complies with its obligations under Article 39.14(k). Otherwise, the State's express obligations after trial become unenforceable. This is clearly not what the legislature intended. *Watkins*, 619 S.W.3d at 278 (Article 39.14 "removes procedural hurdles to obtaining discovery, broadens the categories of discoverable evidence, and expands the State's obligation to disclose").

That the legislature intended those convicted of criminal offenses to have access to crime laboratory records is further evidenced by the 2023 enactment of Section 411.162 of the Government Code, which requires the Texas Department of Public Safety "to establish and maintain a central computerized portal that facilitates the process for requesting crime laboratory records and for transferring those records [to] . . . parties authorized to access the records as a part of discovery under Article 39.14, Code of Criminal Procedure." *See also* Tex. Gov. Code § 411.164 (defense counsel entitled to access to portal created pursuant to § 411.162"); Tex. Gov't Code § 411.147 (director of DPS may release DNA records to "for criminal defense purposes to a

5

defendant, if related to the case in which the defendant is charged or released from custody under Article 17.47, Code of Criminal Procedure, or other court order"); Tex. Gov't Code § 411.147 (director of DPS may release DNA records to "for criminal defense purposes to a defendant, if related to the case in which the defendant is charged or released from custody under Article 17.47, Code of Criminal Procedure, or other court order").[4] This Court should give effect to the clear legislative intent that criminal defendants be given access to the types of records requested here.[5]

## RECORDS SOUGHT

Mr. Milam respectfully requests the following records:

A color copy of the complete DNA case files for Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3, including but not limited to:

1.  Any and all records, reports, bench notes, memos, nonconformity reports, drawings, photographs, electropherograms, data sheets, allelic frequency tables, communications, communication logs, or other documents relating to any DNA testing, analysis, or reinterpretation conducted in relation to these cases at any time.

---

[4] Under the AG opinion issued following SWIFS' request in response to Mr. Milam's record request, if DPS, rather than SWIFS, had conducted the DNA testing and analysis in this case, Mr. Milam would have been able to obtain the records he seeks directly from the agency without needing to request the records from the State or the Court. Surely the legislature did not intend to disadvantage an arbitrary subset of defendants merely because the State used a third-party laboratory, rather than DPS, in their case. Moreover, at least one court has also recognized that although the statute only explicitly identifies DPS, the obligation to disclose records also applies to other entities contracted by the State. *City of Fort Worth v. Abbott*, 258 S.W.3d 320, 325 (Tex. Ct. App.—Austin 2008) ("There is no dispute that the City's forensic science laboratory is a certified DNA laboratory within the meaning of subchapter G, chapter 411 of the government code."). Consequently, it is Mr. Milam's position that the AG opinion is legally incorrect.

[5] For all of these reasons, the Texas Court of Criminal Appeals opinion in *In re Texas Dep't of Criminal Justice*, -- S.W.3d --, 2025 WL 907711 (Tex. Crim. App. Mar. 26, 2025) is not controlling here. In that decision, the CCA held that, absent statutory or constitutional authority to the contrary, trial courts lack general jurisdiction to grant discovery once a case is final. *Id.* at 5. However, the opinion did not pertain to evidence in the possession of the prosecution to which a criminal defendant is statutorily and constitutionally entitled. It pertained to a habeas petitioner's request that TDCJ provide access to him in order for a phlebotomist to conduct a blood draw necessary for genetic testing relevant to a potential habeas claim. *Id.* at *1.

2. Any and all communications between SWIFS and any law enforcement agency, agents for the State of Texas, or any prosecutorial agency, relating to Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3.

3. Any and all records pertaining to all DNA statistics that were calculated during DNA testing and analysis in Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3.

4. Any and all records of any laboratory error, unexpected results, contamination, or other quality assurance incidents relating to or impacting the DNA testing or DNA reinterpretations in #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3.

5. Any and all reports, memos, or documentation, electronic or otherwise, pertaining to the location and chain of custody of any evidence subjected to DNA testing, analysis, or reinterpretation in Laboratory # 08P2031.

6. A list of all testing kits, instruments, and software programs used in the DNA testing and analysis in Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3.

7. All internal communications between SWIFS employees regarding any DNA testing, analysis, or reinterpretation of the DNA evidence in Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3, including but not limited to, all written communications sent or received through any medium, including e-mail, telegrams, and telex messages, and any and all summaries or logs of phone communications or other oral communications.

8. All communications between SWIFS employees and employees or representatives of any law enforcement agency, prosecutorial agency, agents of the State of Texas or any other agency or person involved in the investigation of the case, regarding the DNA testing, analysis, or reinterpretation of the DNA evidence in Laboratory #s 08P2031, 08P2031-S, 08P2031-S1, 08P2031-S2, 08P2031-S3, including but not limited to, all written communications sent or received through any medium, including e-mail, telegrams, and telex messages, and any and all summaries or logs of phone communications or other oral communications.

## CONCLUSION

For the foregoing reasons, Mr. Milam requests that the Court order SWIFS to disclose the above enumerated records. In the alternative, Mr. Milam requests that the Court schedule a hearing on his Motion.

Respectfully submitted,

/s/ Emily Follansbee
Emily Follansbee
Texas State Bar No. 24124283
efollansbee@texasdefender.org
Jennae R Swiergula
Texas State Bar No. 24104466
jswiergula@texasdefender.org
Texas Defender Service
9390 Research Blvd
Kaleido II. Suite 210
Austin, Texas 78759
Ph: (512) 320-8300

Jason D. Hawkins
Federal Public Defender
Jeremy Schepers
Supervisor, Capital Habeas Unit
Texas State Bar No. 24084578
jeremy_schepers@fd.org
Naomi Fenwick
Assistant Federal Public Defender
Texas State Bar No. 24107764
naomi_fenwick@fd.org
Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
(214) 767-2746

*Counsel for Mr. Milam*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2025, I filed the foregoing motion using the efile.txcourts.gov system, which included service upon:

Micheal E. Jimerson
County and District Attorney for Rusk County
Rusk County Courthouse
115 N. Main – Suite 302
Henderson, Texas 75652
mjimerson@co.rusk.tx.us

Tomee Heining
Acting Chief, Criminal Appeals Div. of the Texas Attorney General's Office
/Assistant County Attorney
Post Office Box 12548, Capitol Station
Austin, Texas 78711
tomee.heining@oag.texas.gov

*/s/Emily Follansbee*
Emily Follansbee

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jennae Swiergula on behalf of Jennae Swiergula
Bar No. 24104466
jswiergula@texasdefender.org
Envelope ID: 99756451
Filing Code Description: Motion
Filing Description: Motion for Discovery
Status as of 4/16/2025 3:30 PM CST

Associated Case Party: Blaine Milam

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jennae Swiergula | | jswiergula@texasdefender.org | 4/16/2025 3:15:01 PM | SENT |
| Jeremy Schepers | | jeremy_schepers@fd.org | 4/16/2025 3:15:01 PM | SENT |
| Naomi Fenwick | | Naomi_Fenwick@fd.org | 4/16/2025 3:15:01 PM | SENT |
| Emily Follansbee | | efollansbee@texasdefender.org | 4/16/2025 3:15:01 PM | SENT |

Associated Case Party: Office of the Attorney General

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Lisa Tanner | 19637700 | lisa.tanner.lawyer@gmail.com | 4/16/2025 3:15:01 PM | SENT |
| Travis G.Bragg | | Travis.Bragg@oag.texas.gov | 4/16/2025 3:15:01 PM | SENT |
| Matthew Ottoway | | matthew.ottoway@oag.texas.gov | 4/16/2025 3:15:01 PM | SENT |
| Tommee Heining | | tomee.heining@oag.texas.gov | 4/16/2025 3:15:01 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Tomee Heining | 24007052 | Tomee.Heining@oag.texas.gov | 4/16/2025 3:15:01 PM | SENT |
| Micheal Jimerson | 789406 | mjimerson@co.rusk.tx.us | 4/16/2025 3:15:01 PM | SENT |
| Jennae Swiergula | 24104466 | jswiergula@texasdefender.org | 4/16/2025 3:15:01 PM | SENT |
| Naomi Fenwick | 24107764 | naomi_fenwick@fd.org | 4/16/2025 3:15:01 PM | SENT |
| Micheal Jimerson | | mjimerson@co.rusk.tx.us | 4/16/2025 3:15:01 PM | SENT |
| Emily Follansbee | 24124283 | efollansbee@texasdefender.org | 4/16/2025 3:15:01 PM | SENT |