IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| BLAINE KEITH MILAM, § | |
| *Plaintiff,* § | |
| § | CIV. ACT. NO. 6:25-cv-267 |
| v. § | **DEATH PENALTY CASE** |
| § | |
| MICHEAL E. JIMERSON, § | |
| Rusk County and District Attorney, § | **Execution Date Scheduled** |
| *Defendant.* § | **September 25, 2025** |

## DEFENDANT JIMERSON'S REPLY WITH BRIEF IN SUPPORT

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division
Assistant Attorney General/
Assistant County Attorney
State Bar No. 24007052
 *Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: tomee.heining@oag.texas.gov

*Counsel for Defendant Jimerson*

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................................................i

**TABLE OF AUTHORITIES** ......................................................................................... ii

**INTRODUCTION** ........................................................................................................ 1

**ARGUMENT** ................................................................................................................ 2

    I.    Milam Continues to Fail to State a Claim Upon Which Relief May Be Granted........................................................................... 2

    II.    Milam Cannot Evade His Complaint's Procedural Defects.......... 6

        A.    Milam is time-barred. ............................................................... 6

        B.    Milam is barred by the *Rooker-Feldman* doctrine.............. 7

        C.    Milam's requested relief is improper mandamus. ............... 8

    III.    Jimerson's Recent Disclosures Have Either Completely or Largely Mooted Milam's Claims. ....................................................... 9

**CONCLUSION** ........................................................................................................... 10

**CERTIFICATE OF SERVICE** ................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) ............................................................................ 9

*Coronado v. State*, 384 S.W.3d 919 (Tex. App.—Dallas 2012, no pet.) ........................ 4

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42 (2024) .................. 8

*Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009) ....................... 1, 2

*Ex parte Chaney,* 563 S.W.3d 239 (Tex. Crim. App. 2018) ........................................... 4

*Hutto v. Finney*, 437 U.S. 678 (1978) .............................................................................. 8

*In re Texas Dept. of Crim. Justice*, 710 S.W.3d 731 (Tex. Crim. App. 2025) ............... 3

*Reed v. Goertz*, 598 U.S. 230 (2023) ................................................................................ 6

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) .......................................................... 7

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .............................................. 9

**Constitutional Provisions & Statutes**

42 U.S.C. § 1983 ............................................................................................................. 1, 9

Tex. Code Crim. Proc. Arts. 64.01–64.05 ........................................................................ 7

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(1) .................................................................................................... 10

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 2

# INTRODUCTION

This is civil-rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff Blaine Keith Milam is a Texas death row inmate scheduled to be executed September 25, 2025. On July 18, 2025, Milam filed his complaint, seeking declaratory and injunctive relief. ECF No. 1. Pursuant to this Court's order, Milam filed a more definite statement on August 6, 2025. ECF Nos. 7, 9. Defendant Micheal Jimerson filed a motion to dismiss on August 13, 2025. ECF No. 10. Milam responded on August 22, 2025, *see* ECF No. 12, and Jimerson now replies.

Like his complaint, Milam's response fails to identify any precedent entitling him to relief. Instead, he continues to rely almost exclusively on the Supreme Court's holding in *Dist. Atty's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009). Jimerson has already shown why Milam's reliance on *Osborne* is misplaced. Furthermore, Milam's response fails to show how he can surmount his complaint's procedural defects and repeatedly vacillates on whether he mounts an as-applied or a facial challenge, with his categorization seemingly dependent on the procedural defect he faces. As Milam acknowledges, Jimerson recently turned over virtually all the documents in question in this lawsuit—largely mooting his claims. Given that (1) Milam continues to fail to state a claim upon which relief is granted, (2) Milam's complaint suffers from obvious and fatal procedural defects, and (3) Milam's complaint is mostly mooted by Jimerson's disclosures, the Court should grant Jimerson's motion to dismiss.

# ARGUMENT

## I. Milam Continues to Fail to State a Claim Upon Which Relief May Be Granted.

Milam's complaint relied exclusively on *Osborne*. *See generally* ECF No. 1. As demonstrated by Jimerson's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), *Osborne* fails to provide Milam with a viable claim under his facts and actually refutes Milam's assertion that he is entitled to relief. Like his complaint, Milam's response again fails to muster any precedent standing for the proposition that a Texas district attorney must automatically accede to dilatory discovery requests completely untethered from a jurisdictionally valid state court proceeding. *See generally* ECF No. 12. Milam's failure to present any supporting precedent outside of *Osborne* is fatal to his substantive claim.

In his motion to dismiss, Jimerson pointed out *Osborne*'s admonition that a plaintiff cannot complain that a State's procedures are inadequate when the plaintiff has not attempted to use them. ECF No. 10 at 15–16 (citing *Osborne*, 557 U.S. at 71). In response, Milam asserts that he could not have engaged in factual development during his previous state writ proceedings because he considered the DNA irrelevant until Jimerson raised its inculpatory value while litigating Milam's 2019 subsequent state habeas application. ECF No. 12 at 4. But Milam fails to show he could not have raised his claim earlier. The prosecution clearly presented the DNA evidence at trial because it believed in the evidence's inculpatory value—otherwise why offer it? ECF No. 10 at 23. Milam has thus been aware of the prosecution's view since trial—not just since the subsequent state habeas proceedings. Moreover, Milam has no

2

compelling response to the Texas Court of Criminal Appeals' (CCA) direction in *In re TDCJ* that an applicant can raise a discovery need in his subsequent habeas application. *In re Texas Dept. of Crim. Justice*, 710 S.W.3d 731, 738–39 (Tex. Crim. App. 2025). Milam says that he needs discovery to make the prima facia showing required to obtain the CCA's authorization for a subsequent writ, ECF No. 12 at 4–5, but the CCA has clearly explained that it will consider that need in making its evaluation. *In re TDCJ*, 710 S.W.3d at 738–39. Once the CCA authorizes a subsequent application, the trial court can engage in factual development. *Id*. The fact that Milam believes that his subsequent application will fail at the authorization stage does not mean he lacks an available procedure.

Milam also argues that his request is not a fishing expedition because he has identified a purported need for particular documents. ECF No. 12 at 5–7. However, Milam's response is possibly the first time he has *clearly* explained how specific discovery items might theoretically inform an actual innocence claim. Moreover, Jimerson did not argue in his motion to dismiss that Milam's request was boundless and unfettered simply because he requested too many documents, but also because Milam is attempting to engage in discovery without any pending state habeas proceeding and without any temporal limitation. ECF No. 10 at 16–17. Milam clearly believes that the courts and the State have no ability to refuse his requests, regardless of his dilatoriness or the posture of his case. But allowing never-ending discovery at a convicted murderer's whim is untenable and undermines the State's interest in the finality of its convictions.

3

Finally, Milam admits he has likely already seen the totality of the SWIFS file, can purportedly identify a number of deficiencies, and suggests he may be able to identify additional problems with SWIFS testing if he sees the electronic data. ECF No. 12 at 5–6. But undermining the DNA evidence will not demonstrate his innocence. As he did at trial, Milam dismisses the DNA as merely evidence that these individuals lived together and interacted with each other. *Id.* at 3–4, 12. Undermining evidence that he claims was expected to be on the scene would do little to prove his innocence. DNA was just part of the State's case against Milam but not the whole picture.[1]

Milam does not dispute that he and Jesseca Carson are the only two people who could be responsible for the torture and murder of Amora Carson. There is no third party. *See* ECF No. 9 at 5–6. And Milam confessed. His sole defense is Carson acted alone while he apparently stood by, and he confessed because he was naïve and intellectually disabled (ID). *See* ECF No. 12, at 8–12. But the jury rejected these defenses at trial, and the trial court and the CCA have twice determined he is not ID. *See* SHCR-04 373, 426–35. The second determination came after expert

---

[1] Jimerson does not concede that bitemark testimony is now inadmissible under the Texas Forensic Sciences Commission report cited by Milam. *See* ECF No. 12 at 9; *see also* https://www.txcourts.gov/media/1445768/bite-mark-review-report.pdf. Milam did not cite this 2017 report in his 2019 subsequent application, where the CCA adopted findings of fact and conclusions of law upholding the admissibility of limited bitemark testimony under existing precedent. *See* 2 SHCR-02 at 219 (citing *Ex parte Chaney,* 563 S.W.3d 239, 257 (Tex. Crim. App. 2018); *Coronado v. State*, 384 S.W.3d 919, 926–27 (Tex. App.—Dallas 2012, no pet.)). Regardless, this commission, in this report, considered Milam's case for review, but ultimately declined to reexamine the bitemark evidence, citing "overwhelmingly inculpatory case facts." *See* https://www.txcourts.gov/media/1445768/bite-mark-review-report.pdf.

reexamination—where Milam's IQ score increased substantially—and a live evidentiary hearing. SHCR-04 at 386–408. Furthermore, clawing back his confession on grounds that he was only trying to protect Carson does not now preclude co-responsibility. The State has always maintained they did it together, even with his confession.

Milam tries to pick apart the circumstantial evidence connecting him to the crime but falls flat. He complains that the State could not connect him to the jeans covered in Amora's blood, found in the room where Amora was murdered. ECF No. 12 at 11. He does not dispute it was Amora's blood on the jeans, and the evidence strongly indicates that the person wearing the jeans had contact with a bleeding Amora. Jesseca was wearing the same clothing the night Amora was last seen alive and the next morning when she was known to be dead, while Milam was wearing jeans that did not fit that morning. 2 SHCR-02 188–89. Milam offers no explanation for who was wearing the bloody jeans, if not him.

Milam argues the State could not connect him to the wrench or the wrench to the mutilation of Amora's body. ECF No. 12 at 11–12. But Milam asked his sister, from jail, to remove evidence from under the house, and the only thing found under the house was a wrench, in a plastic bag, under the location in the house where a crime scene was staged and Amora's body was purportedly found, in a hole in the floor. The wrench had been shoved through that same hole. Amora's vagina and rectum were mutilated, and her liver was torn by the insertion of an object that caused significant damage; the components of Astroglide were found in her diaper,

5

on the wrench, and in the room in which she was killed. *See* 2 SHCR-02 190–91; *see also Milam v. State,* AP-76,379, 2012 WL 1868458, *1–3 (Tex. Crim. App. 2012). Milam offers no plausible explanation for this circumstantial but damning evidence, or why he directed his sister to remove the wrench from under the house.

Milam and Carson brutally tortured and murdered this child, hid evidence, staged a crime scene, came up with an alibi, lied to the police, and tried to tamper with evidence from jail. Milam then confessed. Milam has no defense aside from his thrice rejected claim of intellectual disability, and no proof that it was Carson only. Discrediting DNA evidence that he contends should have been there anyway, does not make a prima facie claim of actual innocence.

## II. Milam Cannot Evade His Complaint's Procedural Defects.

### A. Milam is time-barred.

Citing *Reed v. Goertz* and apparently construing his complaint as raising an as-applied challenge, Milam asserts that he is not barred by the statute of limitations because Jimerson's refusal to obtain and turn over SWIFS documents is ongoing. ECF No. 12 at 12 (citing *Reed v. Goertz*, 598 U.S. 230, 236 (2023)). But *Reed* does not support this assertion. In *Reed*, the Supreme Court did not find that Reed's purported due process violation was ongoing despite Reed not receiving all his requested DNA testing. 598 U.S. at 235–36. Rather, the Court found that Reed's injury was complete when the state process for reviewing his claim concluded. *Id.*

In light of this, Milam alternatively argues that the limitations clock should run from when the trial court denied his discovery motion. ECF No. 12 at 12.

6

However, Milam himself explains the distinction between Reed and himself. *Id.* at 15–16. As Milam succinctly notes, Reed sought testing through an established state procedure for DNA testing—Chapter 64[2]—whereas Milam merely seeks records. Reed had to complete his journey through the Chapter 64 process before he could seek relief. Milam, on the other hand, seeks jurisdictionally impermissible discovery. There is no process for him to traverse.[3] Again, Milam should have been aware of the inculpatory value of this evidence since trial, or at the latest (under Milam's view) when the CCA ruled on his state habeas application in 2020. ECF No. 10 at 26. Milam has had everything he needed to seek discovery since trial.

### B. Milam is barred by the *Rooker-Feldman* doctrine.

Milam argues that he is not barred by the *Rooker-Feldman*[4] doctrine because he is not contesting the trial court's ruling on his discovery motion. However, Milam is arguing that he has a due process right that operates to force the district attorney to obtain evidence for him on demand. That proposition was effectively rejected by the trial court's decision. A ruling by this Court that such a right exists cannot coexist with the state court's ruling—such would effectively be an appellate decision overturning the trial court's order.

---

[2] *See* Tex. Code Crim. Proc. Arts. 64.01–64.05.

[3] Indeed, in attempting to evade the *Rooker-Feldman* doctrine, Milam is adamant that the trial court's decision has nothing to do with his case whatsoever. ECF No. 12 at 15–16.

[4] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Milam attempts to evade the *Rooker-Feldman* doctrine by asserting that he is permissibly raising a facial challenge to Texas's post-conviction statutes. ECF No. 12 at 14 ("The alleged due-process injury is asserted to be caused by the totality of Texas's post-conviction evidence-access regime[.]"). However, Milam then immediately pivots into arguing it was Jimerson's discretionary decision that denied him due process (i.e., an as-applied challenge), but he maintains that such discretion is just a product of the statute (so his challenge remains facial). *Id.* at 15–16.

As previously noted, Milam's theories are hopelessly muddled and confused. Regardless, he cannot have it both ways—if he is contesting Jimerson's discretionary decision, then he pleads himself into the *Rooker-Feldman* doctrine and a request for improper mandamus. And if he raises a facial challenge, he is time-barred, as the statutes governing post-conviction discovery have been in place well longer than the two-year statute of limitations and Milam has been aware of the inculpatory nature of the DNA evidence since trial and could have pursued the DNA records at any time.

### C.   Milam's requested relief is improper mandamus.

Milam asserts that Jimerson "essentially says that any order directing any state official to do anything is an improper writ of mandamus."[5] ECF No. 12 at 17 n.8. He further argues that *Ex parte Young*, 209 U.S. 123 (1908), permits his requests for declaratory and injunctive relief. *Id.* at 17. But Milam distorts Jimerson's

---

[5]   Milam's citation to *Hutto v. Finney*, 437 U.S. 678 (1978), abrogated by *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 44 (2024), does not appear to support his argument. ECF No. 12 at 17 n.8. In *Hutto*, the district court order in question prohibited prison officials from engaging in certain practices. *Hutto*, 437 U.S. at 684–85. It did not appear to mandate prospective action.

8

arguments and his own claim. Jimerson did not argue that declaratory and injunctive relief was unavailable in all circumstances. ECF No. 10 at 28–29. And while injunctive relief is typically prohibitory in nature, Jimerson did not say that all prospective, mandatory relief is banned in § 1983. *Id.* Rather, Milam's argument is that he has a due process right to limitless discovery implicitly derived from state statute and caselaw permitting actual innocence claims. To vindicate this interstitial right (and in turn vindicate his right to raise an actual innocence claim), Milam would have this Court require Jimerson to obtain the evidence in question from SWIFS and transmit it to Milam. But while Milam dresses up his request in procedural due process, he is, at bottom, seeking to compel a state actor (the district attorney) to acquire documents to assist him in raising state-law-based actual innocence claims. That is impermissible mandamus under the precedent cited in Jimerson's motion to dismiss. ECF No. 10 at 28–29.

### III.     Jimerson's Recent Disclosures Have Either Completely or Largely Mooted Milam's Claims.

Article III of the Constitution confines the federal courts to adjudicating actual cases and controversies. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). "A case becomes moot . . . when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotations omitted).

In the case-at-bar, Jimerson did not have custody of the documents Milam sought at the initiation of this proceeding. ECF No. 10 at 1 n.1. However, SWIFS transmitted certain documents to Jimerson after Milam requested SWIFS

reinterpret the DNA testing results. ECF No. 10 at 7 & n.6. Jimerson in turn disclosed those documents to Milam. It now seems that Milam has received most of the documents sought in his complaint. ECF No. 12 at 5 ("[Milam] has even seen much of SWIFS's file, perhaps at this point even the totality of the paper file."). Currently, Milam only appears to seek "electronic data created by SWIFS when it conducted its original testing."[6] *Id.* Accordingly, to the extent that Milam's complaint sought documents from the SWIFS paper file, his claim is moot and subject to dismissal under Federal Rule of Civil Procedure 12(b)(1).

## CONCLUSION

For the foregoing reasons, Jimerson asks that the Court grant his motion to dismiss Milam's lawsuit.

    Respectfully submitted,

    KEN PAXTON
    Attorney General of Texas

    BRENT WEBSTER
    First Assistant Attorney General

    JOSH RENO
    Deputy Attorney General
    for Criminal Justice

    TOMEE M. HEINING
    Chief, Criminal Appeals Division

---

[6] Again, it is only in his response brief that Milam finally explains how he believes specific discovery items will assist him (however tenuously) in developing his actual innocence claim. This level of specificity was sorely lacking from his complaint, more definite statement, and trial court motion, which only make general reference to the electronic data that Milam now suggests is the crux of his discovery request. *See generally* ECF Nos. 1, 9, & 9-1.

10

|  |  |
|---|---|
| *Attorney-in-charge | s/ Tomee M. Heining<br>*TOMEE M. HEINING<br>Chief, Criminal Appeals Division /<br>Assistant County Attorney<br>State Bar No. 24007052<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711<br>Tel.: (512) 936-1400<br>Fax: (512) 320-8132<br>Email: tomee.heining@oag.texas.gov<br><br>ATTORNEYS FOR DEFENDANT |

**CERTIFICATE OF SERVICE**

      I do hereby certify that on August 28, 2025, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means:

Jeremy Schepers
Supervisor, Capital Habeas Unit
Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
Email: jeremy_schepers@fd.org

Emily Follansbee & Jared Tyler
Texas Defender Service
P.O. Box 82236
Austin, TX 78708
Email: efollansbee@texasdefender.org; jptyler@texasdefender.org

                                        s/ Tomee M. Heining
                                        TOMEE M. HEINING
                                        Chief, Criminal Appeals Division /
                                        Assistant County Attorney