IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| BLAINE KEITH MILAM, § § Plaintiff, § § v. § § MICHEAL E. JIMERSON, § § Defendant. § | Case No. 6:25-cv-267-JDK |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS

Plaintiff Blaine Keith Milam, proceeding with counsel but *in forma pauperis*, is a death-sentenced prisoner in the custody of the Texas Department of Criminal Justice. Milam brought this suit under 42 U.S.C. § 1983 asserting a violation of the Fourteenth Amendment. He sues Micheal E. Jimerson, Esq., the District Attorney of Rusk County, Texas ("the D.A.") in his official capacity.

Milam contends that the D.A. refuses to request certain DNA records from the Dallas County Southwestern Institute of Forensic Sciences ("SWIFS") and provide those records to Milam so he may attempt to establish an actual innocence claim in a successive state application for writ of habeas corpus. Milam alleges that the D.A.'s refusal to request the records violates the Due Process Clause of the Fourteenth Amendment.

1

After a review of the Plaintiff's Original Complaint (Docket No. 1), Plaintiff's More Definite Statement[1] (Docket No. 9), Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket No. 10), Plaintiff's Response to Defendant's Motion to Dismiss (Docket No. 12), and Defendant's Reply (Docket No. 13), the Court **GRANTS** the Motion to Dismiss (Docket No. 10). Milam's Original Complaint (Docket No. 1) is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

I.      Background

Milam is incarcerated at the Allan B. Polunsky Unit of the Texas Department of Criminal Justice in Livingston, Texas. Docket No. 1 at 2. He was sentenced to death for the 2008 murder of his girlfriend's daughter, 13-month-old Amora Bain Carson, in violation of Texas Penal Code § 19.03(a)(8).

The medical examiner concluded that Amora's cause of death was homicidal violence "due to multiple blunt-force injuries and possible strangulation." *Milam v. State*, 2012 WL 1868458 (Tex. Crim. App. May 23, 2012). Baby Amora suffered "facial abrasions and bruises; twenty-four human bite marks; bruises, scrapes, and abrasions from head to toe; bleeding underneath the scalp; extensive fracturing to the back of the skull; bleeding between the brain and the skull; a laceration to the brain tissue as well as swelling, bleeding, and bruising; bleeding around the optic nerves; bleeding in the eyes and around the jugular vein; fractures to the right arm

---

[1] A court may require a plaintiff to amend a complaint to include a more definite statement "of its claim." *See* FED. R. CIV. P. 12(e). Here, the Court treated Milam's More Definite Statement as a supplement to his original complaint.

2

and leg; eighteen rib fractures; a tear to the liver; and extensive injury to the genitals." *Id.*[2] Milam's conviction and sentence were affirmed. Milam subsequently sought post-conviction relief in state and federal court. Both habeas petitions were denied. *Ex parte Milam*, 2013 WL 4856200 (Tex. Crim. App. Sept. 11, 2013); *Milam v. Director, TDCJCID*, 2017 WL 3537272 (E.D. Tex. Aug. 16, 2017); *Milam v. Davis*, 733 F. App'x 781 (5th Cir.) (declining to grant a Certificate of Appealability), *cert. denied*, 586 U.S. 924 (2018).

In 2019, Milam filed his first successive state habeas petition raising several claims, including the claim that the science regarding bite mark evidence was not reliable and that he cannot be executed due to intellectual disability. *Ex parte Milam*, 2019 WL 190209, at *1 (Tex. Crim. App. Jan. 14, 2019). His state petition was denied. *Ex parte Milam*, 2020 WL 3635921 (Tex. Crim. App. July 1, 2020).

On October 2, 2020, Milam filed a motion to file a successive federal habeas petition raising an intellectual disability claim. The Fifth Circuit denied the motion, holding that a claim under either *Moore v. Texas*, 581 U.S. 1 (2017), or *Atkins v. Virginia*, 536 U.S. 304 (2002), was previously available to him. *In re Milam*, 2020 WL 7658498, at *2–3 (5th Cir. Oct. 27, 2020).

On December 15, 2020, Milam filed a second-in-time federal habeas petition in the U.S. District Court for the Southern District of Texas. The case was transferred to the Eastern District of Texas, which transferred the petition to the Fifth Circuit

---

[2] Additional facts and details of Milam's underlying criminal case may be found in *Milam v. Director, TDCJCID*, 2017 WL 3537272 (E.D. Tex. Aug. 16, 2017).

3

for consideration under 28 U.S.C. § 2244(b)(3)(A). *In re Milam*, 832 F. App'x 918 (5th Cir.), *cert. denied*, *Milam v. Lumpkin*, 142 S. Ct. 172 (2021).

On January 11, 2021, Milam filed a petition for writ of mandamus requesting a stay of his execution. *In re Blaine Keith Milam*, No. WR-79,332-03 (Tex. Crim. App. Jan 15, 2021). The Texas Court of Criminal Appeals denied his request for mandamus on January 15, 2021. *Id.*

Also in January 2021, Milam filed a third successive state habeas petition raising claims pertaining to intellectual disability and intoxication. *Ex parte Milam*, 2021 WL 197088 (Tex. Crim. App. Jan. 15, 2021). His state petition was denied. *Ex parte Milam*, 693 S.W.3d 342 (Tex. Crim. App. 2024), *cert. denied*, *Milam v. Texas*, 145 S. Ct. 1334 (2025). Milam is scheduled for execution on September 25, 2025. Docket No. 1 at 3.

On April 16, 2025, Milam filed a post-conviction "Motion for Discovery of DNA and Serology Records from the Southwest Institute of Forensics Sciences" in the 4th Judicial District of Rusk County, Texas, the convicting court for Milam's death sentence. Docket No. 9-1. After briefing, the 4th Judicial District Court denied Milam's Motion for Discovery on May 21, 2025. Docket No. 9-4.

This case involves only Milam's DNA records discovery challenge. His action arises under 42 U.S.C. § 1983 and alleges a violation of the Fourteenth Amendment. Milam seeks declaratory and injunctive relief to compel the D.A. to request certain DNA records from SWIFS and provide those records to Milam. Docket No. 1 at 13.

## II. Analysis

The D.A. moves to dismiss Milam's claims on several independent grounds. The Court addresses two below: (A) lack of jurisdiction and (B) failure to state a claim. Because the Court agrees with the D.A. that Milam failed to state a claim, it need not address the remaining arguments. *See, e.g.*, *Manning v. Upjohn Co.*, 826 F.2d 545, 547 (5th Cir. 1989) ("Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.").

### A. Jurisdiction

The D.A. first seeks dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Docket No. 10 at 9. Although the D.A.'s brief is light on this point, the Court presumes that the D.A. is attacking Milam's standing.

Two recent decisions from the Supreme Court foreclose the argument. In *Reed v. Goertz*, the Court held that a plaintiff had standing to "sue[] in federal court under 42 U.S.C. § 1983, asserting that Texas's post-conviction DNA testing law failed to provide procedural due process." 598 U.S. 230, 233 (2023). "[I]f a federal court concludes that Texas's post-conviction DNA testing procedures violate due process, that court order would eliminate the state prosecutor's justification for denying DNA testing." *Id.* at 234. A favorable judgment would order "a change in a legal status, and the practical consequence of that change would amount to a significant increase in the likelihood that the state prosecutor would grant access to the requested

5

evidence and that [the plaintiff] therefore would obtain relief that directly redresses the injury suffered." *Id.* (quotations omitted).

In *Gutierrez v. Saenz*, the Supreme Court clarified that a § 1983 plaintiff has standing to sue the state prosecutor where his federal complaint challenges the "barrier" between the state law and the DNA testing sought by the plaintiff. 145 S. Ct. 2258, 2262 (2025). The Court cautioned that *Reed* does not "transform[] the redressability inquiry into a guess as to whether a favorable court decision will in fact ultimately cause the prosecutor to turn over the evidence." *Id.* at 2268. "That a prosecutor might eventually find another reason, grounded in [the state law] or elsewhere, to deny a prisoner's request for DNA testing does not vitiate his standing to argue that the cited reasons violated his rights under the Due Process Clause." *Id.*

The *Guiterrez* Court further stated that a Texas prisoner could file a due process claim under § 1983 against a prosecutor who refused "'to release . . . biological evidence for testing.'" *Guiterrez,* 145 S. Ct. at 2265 (citing *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). In *Skinner,* the plaintiff had alleged that the prosecutor's refusal to turn over evidence deprived him of "'his liberty interests in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of his sentence.'" 562 U.S. at 530. The Court reasoned that, while the plaintiff could not challenge in federal court the Texas Court of Criminal Appeal's decisions denying his state-law motions, he could allege in a § 1983 action that the state law unconstitutionally prevented him from obtaining such testing.³ *Id.* at 532.

---

³ The U.S. Supreme Court stated in *Osborne* and then in *Skinner* that challenges to DNA testing procedures may be brought in a § 1983 action because requesting access to testing does not

6

Milam, similar to the plaintiff in *Gutierrez*, has standing to bring his § 1983 claim because he "alleges that the [state] prosecutor's denial of his request for DNA testing deprived him of his liberty interests in utilizing state procedures to obtain an acquittal and/or reduction of his sentence, in violation of his right to due process of law." *Id.* at 2266 (quotation omitted). "The declaratory judgment [Milam] seeks would redress that injury by ordering a change in the legal status of the parties and eliminating the state prosecutor's allegedly unlawful justification for denying DNA testing." *Id.* (citation modified).

Thus, although the Court concludes below that Milam has failed to state a due process violation under Federal Rule of Civil Procedure 12(b)(6), Milam's allegations are sufficient under *Gutierrez* and *Reed* to satisfy Article III standing.

B.   **Failure to State a Claim**

The D.A. also argues that Milam failed to state a due process violation and that dismissal is therefore proper under Rule 12(b)(6).

1.   **Standard of Review**

When a defendant files a motion to dismiss under Rule 12(b)(6), the trial court must assess whether a complaint states a plausible claim for relief. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 329–330 (5th Cir. 2013) (citing *Bass v. Stryker*

---

necessarily imply the guilt or innocence of a defendant as the defendant is not yet in possession of exculpatory evidence. *Skinner v. Switzer*, 562 U.S. 521, 534 (2011); *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 55, (2009). Such § 1983 actions are limited, but not automatically barred, by the *Rooker-Feldman* doctrine, which prohibits re-litigation of state judgments in federal court. *Skinner*, 562 U.S. at 532. A challenge to the constitutional adequacy of state-law procedures for post-conviction DNA testing is not within *Rooker-Feldman*'s ambit. *Id.* So long as the plaintiff does not challenge the state court decisions on DNA testing themselves, "it is not an impediment to the exercise of federal jurisdiction that the 'same or a related question' was earlier aired between the parties in state court." *Skinner*, 562 U.S. at 532.

*Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

The Supreme Court clarified the standards that apply in a motion to dismiss for failure to state a claim in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The Court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible." *Id.*; *see also Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006). The distinction between merely being possible and plausible was reiterated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. *Id.* at 678. A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because the D.A. has filed a Rule 12(b)(6) motion, the Court construes the complaint in favor of Milam and has accepted as true all well-pleaded facts. *See Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citing *Gonzales v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

If the facts alleged in a complaint do not permit the court to infer more than the mere possibility of misconduct, a plaintiff has not shown entitlement to relief. *Id.* (citing FED. R. CIV. P. 8(a)(2)). Dismissal is therefore proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. *Rios*, 444 F.3d at 421.

### 2. Analysis

Milam alleges that the D.A. violated his due process rights under the Fourteenth Amendment by refusing to request certain DNA records from SWIFS so that Milam may attempt to establish an actual innocence claim. He asserts that "[o]nce the State elects to use forensic DNA evidence to obtain and preserve a conviction, due process requires that the prisoner be given procedures adequate to test the reliability of that evidence." Docket No. 1 at 11. He claims that Texas's "postconviction review procedures vest total, unreviewable discretion in the District Attorney to withhold these records and provide[] no alternative judicial or administrative process to obtain them." *Id*. at 12. Milam proposes that the remedy for this alleged due process violation is a declaratory judgment and an injunction

"compelling [the D.A.] forthwith to produce the requested DNA records and enjoining [the D.A.] from withholding those materials or otherwise obstructing [Milam]'s access to them." *Id*. at 13.

The D.A. argues that Milam has failed to allege facts demonstrating that a due process violation occurred and that dismissal of his § 1983 claim is therefore warranted under Rule 12(b)(6). Docket No. 10 at 18. The Court agrees.

To state a claim under § 1983, a plaintiff must allege that there was a violation of a right secured by the Constitution or laws of the United States and that the deprivation was committed by a person acting under the color of state law. *See Sw. Bell Tel., LP v. City of Houston,* 529 F.3d 257, 260 (5th Cir. 2008); *see also Jackson v. Randolph*, 772 F. App'x 195, 196 (5th Cir. 2019). As an initial matter, there is no freestanding federal constitutional right to obtain post-conviction DNA testing. *Osborne*, 557 U.S. 72 ; *see also Roddy v. Babin*, 795 F. App'x 299, 300 (5th Cir. 2020) (per curiam) ("[T]he Supreme Court [has] determined that there is no freestanding federal substantive due process right to post-conviction DNA testing ....") (citing *Osborne*, 557 U.S. at 72–73). Such a right, however, may be created by state law. *Jackson*, 772 F. App'x at 196 (per curiam).

In Texas, "a prisoner has a statutory right to move for post-conviction forensic DNA testing of evidence containing biological material pursuant to Chapter 64 of the Texas Code of Criminal Procedure." *Sanchez v. Lumpkin*, 2021 WL 6127512, at *2–3 (W.D. Tex. Dec. 28, 2021) (citing TEX. CODE CRIM. P. ANN. art. 64.01 and *Elam v. Lykos*, 470 F. App'x 275, 276 (5th Cir. 2012)). If a state creates a right to

postconviction DNA testing, as Texas has done in Chapter 64, "then the procedures to enforce that right must satisfy due process." *Pruett v. Choate*, 711 F. App'x 203, 206 (5th Cir. 2017) (internal citation omitted); *see also Evitts v. Lucey,* 469 U.S. 387, 393 (1985) (explaining that states are under no obligation to provide mechanisms for postconviction relief, but when they choose to do so, the procedures they create must comport with due process and provide litigants with a fair opportunity to assert their state-created rights.).

As explained below, Milam's complaint about the D.A.'s refusal to request additional SWIFS records does not state a due process violation.

**a.** First, Milam fails to allege how Chapter 64 deprived him of due process here.[4] Milam does not assert a facial or an as-applied challenge to Chapter 64. Nor does he contend that he meets any element of the test stated in Chapter 64. In fact, when Milam filed his Motion for Discovery of DNA and Serology Records from the Southwest Institute of Forensics Sciences in state court, Docket No. 9-1, Milam did not assert that he was entitled to the DNA records pursuant to Chapter 64. Milam's motion was merely a motion for post-conviction discovery. *Id*. This failure to

---

[4] Article 64 of the Texas Code of Criminal Procedure permits a convicted defendant to move in "the convicting court" for DNA testing of evidence that was "secured in relation to the offense that is the basis of the challenged conviction and was in possession of the state during the trial of the offense." TEX. CODE CRIM. P. art. 64.01(a–1), (b). Article 64 allows the state court to order testing if it finds that:
    (1)    the unaltered evidence is available for testing;
    (2)    identity was at issue in the case;
    (3)    the convicted person establishes by a preponderance of the evidence that he would not have been convicted if DNA testing provided exculpatory results; and
    (4)    the motion is not made to delay the execution of a sentence.
*Id*. art. 64.03(a).

11

challenge the adequacy of the Chapter 64 procedures is independently fatal to Milam's claim. *See, e.g., Vela*, 2022 WL 2785914, at *2 (dismissing a civil rights case brought by an inmate requesting that the district attorney undertake postconviction DNA testing because the inmate did not challenge the procedural due process or the adequacy of the state law procedures), *appeal dismissed*, 2022 WL 18232558 (5th Cir. Aug. 25, 2022).

If a state court denies a request under Chapter 64, an inmate cannot "mak[e] a direct challenge in federal court to that state-court denial[; instead], he may make a facial challenge to the statutes, rules, and interpretations on which the denial was based." *Gutierrez v. Saenz*, 93 F.4th 267, 271 (5th Cir. 2024) (citing *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013)), *cert. granted*, 2024 WL 4394129 (U.S. Oct. 4, 2024); *rev'd and remanded on other grounds by Gutierrez v. Saenz*, 145 S. Ct. 2254 (2025). When considering a complaint challenging the "statutes, rules, and interpretations on which the denial was based," the federal court considers whether "the state-provided procedures [are] adequate to protect the substantive rights provided." *Wood v. Patton*, 2025 WL 629282, at *6 (W.D. Tex. Feb. 19, 2025), *aff'd*, 130 F.4th 516 (5th Cir. 2025); *cert. granted* by *Wood v. Patton*, 2025 WL 1787689 (U.S. 2025). As another district court in Texas has explained:

> In order for [the state-provided] procedures to be unconstitutional, it would have to be determined that the procedures were "fundamentally inadequate" to protect [the prisoner's] right to seek post-conviction DNA testing, offending "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."

*Osborne*, 557 U.S. at 69. This is a difficult standard to meet, and Milam does not even try here. *Cromartie v. Shealy*, 941 F.3d 1244, 1252 (11th Cir. 2019) (citing *Skinner*, 562 U.S. at 525) (leaving "slim room for the prisoner to show that the governing state law denies him procedural due process.").

Milam is therefore unlike the plaintiffs in *Gutierrez*, 145 S. Ct. at 2264, and *Woods v. Patton*, 2025 WL 2237942, at *2 (5th Cir. Aug. 5, 2025). The *Gutierrez* and *Woods* plaintiffs both claimed that Chapter 64 violated their right to procedural due process. Without proceeding under Chapter 64 or attacking Chapter 64, Milam lacks a mechanism to trigger due process as he does not have a freestanding federal substantive due process right to post-conviction DNA testing. *Osborne*, 557 U.S. at 72–73.

    **b.**    Milam's complaint suffers a second problem. He focuses his attack on the D.A., but the D.A. has not enforced Chapter 64 against him. When Milam asked the D.A. to request records from SWIFS, the D.A. declined to do so based on his executive discretion, independent of Chapter 64. And when Milam asked the Texas courts to grant his motion for post-conviction discovery, Milam did not base his request on Chapter 64, *see* Docket No. 9-1. This means that the D.A.'s opposition to that request was likewise not based on Chapter 64. Though not binding, the Court finds persuasive Justice Thomas's statement regarding similar circumstances: "To say that this conduct amounts to enforcing Chapter 64 makes as much sense as saying that a party to a discovery dispute, who defeats a motion to compel, in effect, 'enforces' the Federal Rules of Civil Procedure by continuing not to turn over the demanded

documents." *Reed*, 598 U.S. at 248-49 (Thomas, J., dissenting). Under these facts, to say that the D.A. "enforced" Chapter 64 is not plausible.

  **c.** The relief Milam seeks against the D.A., moreover, sounds in mandamus, which the Court lacks the power to issue. In his More Definite Statement, Milam concedes that all biological material was tested and that there is no untested biological material remaining in his underlying criminal case.[5] Docket No. 9 at 6. As one court explained, this "stand-alone request . . . for the Court to compel [the district attorney] to undertake . . . post-conviction [discovery in the form ordering and producing] DNA testing [records] in [the plaintiff's] criminal case is in the nature of mandamus." *Vela v. Ogg*, 2022 WL 2785914, at *1 (S.D. Tex. June 8, 2022)

  "[I]t is well-established that federal courts lack the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought." *Wood*, 2025 WL 629282, at *4 (citing *Moye v. Clerk, Dekalb Cnty. Superior Ct.*, 474 F.2d 1275 (5th Cir. 1973)). Given that the only relief sought by Milam is to compel the D.A. to order and produce DNA testing records, without the benefit of Chapter 64, Milam has failed to state a claim for which the Court could grant relief. *See Vela*, 2022 WL 2785914, at *2 (explaining that the court lacked jurisdiction and authority to compel the district attorney by writ of mandamus to undertake updated forensic DNA testing when the

---

[5] Milam does not intend to use any DNA evidence that may belong to a third person—*e.g.*, DNA not belonging to him, his girlfriend Jesseca Carson, or Baby Amora—for his innocence showing. Docket No. 9 at 5-6. Instead, he intends to show that the DNA evidence used to uphold his conviction is unreliable and therefore cannot be used to sustain the judgment against him. *Id.* Rule 26(b) has never been "a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. La. Health Serv. and Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (citing *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010)).

plaintiff's stand-alone request was for the court to compel the district attorney to undertake post-conviction DNA testing of biological material in his criminal case) (citing *Santee v. Quinlan*, 115 F.3d 355, 357 (5th Cir. 1997)); *Wood*, 2025 WL 629282, at *4 (explaining that if the plaintiff was pursuing an order compelling DNA testing under Chapter 64 then the plaintiff would have the standing to sue) (citing *Reed*, 598 U.S. at 234).

    **d.**    Finally, even if his action did not sound in mandamus, Milam provides no legal argument or factual allegations to support his contention that his Fourteenth Amendment due process rights have been violated. Milam concedes that in 2018, he reviewed 800 pages of what appeared to be "SWIFS" records relating to serological and DNA testing performed by SWIFS in his criminal case. Docket No. 9 at 1–2. Milam also reviewed the D.A.'s files regarding his capital murder conviction, which had DNA records as well. *Id.* In 2019, Milam separately obtained 162 pages of non-case-specific paper records (such as Standard Operating Procedures) directly from SWIFS pursuant to a Public Information Act request. Docket No. 9 at 2. Milam asserts that these records have never been represented to constitute the complete paper file possessed by SWIFS as it relates to its serological and DNA testing in his case.

But Milam alleges no facts to suggest that additional DNA records exist apart from what he has already received. Thus, Milam's conclusory statement that the D.A.'s failure to request some additional, unknown DNA records from SWIFS simply

does not state a claim for relief. *See Ashcroft*, 556 U.S. at 677–78; *Neitzke*, 490 U.S. at 327.

### III. Conclusion

Viewing the pleadings in the light most favorable to Milam and accepting as true all well-pleaded facts, the Court concludes that Milam has failed to allege facts that the D.A. violated his Fourteenth Amendment due process rights. The Court need not undertake an analysis of whether equitable relief is appropriate as Milam did not prevail on the merits of his claims. Milam's request for declaratory and injunctive relief against the D.A. is in his official capacity is denied pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

Accordingly, it is **ORDERED** that Defendant D.A.'s Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (Docket No. 10) is **GRANTED**. It is further **ORDERED** that Milam's claims against Defendant D.A. are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) for failure to state a claim upon which relief may be granted. All motions which may be pending in this action are **DENIED**.

So **ORDERED** and **SIGNED** this **29th** day of **August, 2025.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE